IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 23, 2003 Session

## UNION PLANTERS BANK, N.A., Executor and Trustee v. BOBBYE C. SHEPARD, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. 99-0874-3     D. J. Alissandatos, Chancellor**

---

**No. W2002-01188-COA-R3-CV - Filed July 14, 2003**

---

Executor brought this action to recover proceeds of the sale of decedent's property prior to decedent's death. Both parties moved for attorney's fees. The trial court entered judgment for Defendant and awarded Defendant's attorney's fees. On issues relating to decedent's property, we affirm in part and reverse in part. We reverse the award of attorney's fees and remand for a determination of reasonableness.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY, J., joined.

Robert F. Miller and Paul C. Peel, Memphis, Tennessee, for the appellant, Union Planters National Bank, N.A.

J. Richard Rossie and David A. Billions, Memphis, Tennessee, for the appellee, Bobbye C. Shepard.

**OPINION**

The facts underlying this cause of action are undisputed. The plaintiff in this case, Union Planters Bank, N. A. (hereinafter "Executor"), is the executor of and trustee under the Will of decedent Robert B. Shepard (Mr. Shepard). The named defendants are all beneficiaries under Mr. Shepard's Will, but the action is one to determine the validity of transfers of Mr. Shepard's property to his wife, Bobbye C. Shepard (Ms. Shepard) prior to his death. Accordingly, we will refer to the defendant(s) as "Ms. Shepard."

At the time of Mr. Shepard's death, Mr. and Ms. Shepard had been married for over thirty years. Mr. Shepard had one son, Michael James Shepard, from a previous marriage. At the time of his marriage to Bobbye Shepard in 1968, Mr. Shepard was paralyzed from the waist down as a result

of injuries sustained in World War II.  Mr. Shepard was a successful businessman and handled all of the family's financial affairs.  Ms. Shepard worked part-time and the family maintained a joint account utilized for family finances and the purchase of stocks held in Mr. Shepard's name.  Mr. Shepard suffered a stroke in 1998, in addition to suffering cancer of the sinus cavity.  In January 1999,  Mr. Shepard gave a durable power of attorney to Ms. Shepard.

Mr. Shepard owned a home and lot on Pickwick Lake and $552,511.00 in stocks.  All or most of the stock was acquired during the Shepard's marriage.  In a Will executed on August 9, 1989, Mr. Shepard directed that the Pickwick property was to be devised to Ms. Shepard.  The residual portion of the estate was devised and bequeathed to a trust, with income and principal to be used for the support of Ms. Shepard, if needed.  The trust terminates at Ms. Shepard's death and the remaining principal is bequeathed to Coe College and St. Jude Children's Research Hospital.

Acting as attorney in fact, on November 14, 1998, Ms. Shepard sold Mr. Shepard's Pickwick property to his son, Michael Shepard.  She deposited the proceeds of the sale into her individual account.  On February 22, 1999, Ms. Shepard also sold  some of the stocks held by Mr. Shepard.  The $158,059.09 in proceeds from this sale were deposited into the Shepard's joint bank account.  On February 24, Ms. Shepard withdrew $158,000.00 from the joint account and deposited it into an individual investment account.

Mr. Shepard died in April 1999.  Executor offered Mr. Shepard's Will for probate on May 17, 1999, and on September 28, 1999, filed a complaint to construe the Will in Shelby County Chancery Court.  In its complaint, Executor contends that the sale of the Pickwick property constituted an ademption by extinction and that proceeds from its sale rightfully are an asset of Mr. Shepard's estate.  In its amended complaint, Executor further asserts that the $158,000 withdrawn from the Shepard's joint account and deposited into Ms. Shepard's individual account rightfully are an asset of Mr. Shepard's estate.

Executor took Ms. Shepard's discovery deposition on May 8, 2000.  Executor offered part of this deposition into evidence at trial on February 5, 2002.  The trial court ruled that Executor thereby waived the Dead Man's Statute, which is codified at Tenn. Code, Ann. § 24-1-203.  The court accordingly permitted the entire deposition to be entered into evidence, and allowed Ms. Shepard to testify at trial regarding conversations with Mr. Shepard.

The trial court entered a judgment for Ms. Shepard on April 5, 2002.  The court found by clear and convincing evidence that Mr. Shepard intended for Ms. Shepard to have the net proceeds from the sale of the Pickwick property as an inter vivos gift and that there was valid delivery of these proceeds to Ms. Shepard.  The trial court also found by clear and convincing evidence that Mr. Shepard intended to make an inter vivos gift of the $158,059.09 proceeds from the sale of various stocks and that the $158,059.09 was validly delivered to Ms. Shepard.  The trial court awarded Ms. Shepard her attorney fees and expenses.  Executor filed a timely notice of appeal to this Court.

***Issues on Appeal***

Executor raises the following issues for review by this Court:

(1)     Whether the sale of the Pickwick property constituted an ademption by extinction so that the claim of the defendant, Bobbye Shepard, to the property and proceeds from its sale under the Will was extinguished.

(2)     Whether the trial court erred in holding that Executor waived the Dead Man's Statute by introducing portions of deposition testimony of Bobbye Shepard into the record.

(3)     Whether the trial court erred in holding defendant, Bobbye Shepard, proved by clear and convincing evidence that she received proceeds from sale of property and stocks as gifts from decedent, Robert Shepard.

(4)     Whether defendant, Bobbye Shepard, rebutted by clear and convincing evidence the presumption of undue influence that arose from the transfer of proceeds to herself while an attorney-in-fact of the decedent, Robert Shepard.

(5)     Whether trial court erred in denying Executor's attorney's fees.

(6)     Whether trial court erred in awarding defendant, Bobbye Shepard, her attorney's fees from Robert Shepard's estate when services did not inure to benefit of estate.

### *The Pickwick Property*

The parties stipulate that the Pickwick property was sold to Michael Shepard for $123,400, the appraised value for real estate tax purposes. The parties further stipulate that the fair market value of the property was appraised in 1998 and 1999 at $215,000. The sale was reported to the IRS as a bargain sale with a gift element of $81,600. Michael Shepard's purchase of the Pickwick property was financed by the Executor, Union Planters National Bank, which holds a mortgage on the property. The parties stipulate that Ms. Shepard knew the contents of her husband's Will, and Ms. Shepard testified that she understood that had she not sold the property under the power of attorney, she would have inherited it.

### *I. Ademption by Extinction*

The question of whether the devise of the Pickwick property was adeemed by extinction is a question of law. Our review, therefore, is do novo, with no presumption of correctness accorded to the judgment of the trial court. *In re Estate of Hume*, 984 S.W.2d 602, 604 (Tenn. 1999).

The ademption of a devise or bequest is "the extinction, alienation, withdrawal, or satisfaction of the legacy by some act of the testator by which an intention to revoke is indicated: the doing of some act with regard to the subject-matter which interferes with the operation of the Will." *Id.* Where no property left in the estate at the time of the testator's death fits the description of the specific legacy as described in the Will, the legacy has been adeemed. *Ford v. Cottrell*, 207 S.W. 734, 736 (Tenn. 1918). A legacy may be adeemed by satisfaction of the gift by the testator or by extinction. *Estate of Hume*, 984 S.W.2d at 604. An ademption by extinction occurs when the legacy is "annihilated or its condition so altered that nothing remains to which the terms of the bequest [or devise] can apply." *Id.* (quoting *Wiggins v. Cheatham*, 225 S.W. 1040, 1041 (Tenn. 1920)). In *Estate of Hume*, the Tennessee Supreme Court identified a two-part test to determine whether a devise or bequest has been adeemed by extinction: (1) whether the gift is a specific legacy and, if it is, (2) whether it is found in the estate at the time of the testator's death. *Id.* at 605 (quoting *McGee v. McGee*, 413 A.2d 72 (R.I.1980)). The ademption by extinction results regardless of the intention of the testator, the hardships of the case, or who initiates "the doing" of the act because of which the gift no longer exists. *Id.* at 604. An ademption of a legacy by extinction destroys the legatee's rights to it. *Ford v. Cottrell*, 207 S.W. at 736.

Ms. Shepard argues that the doctrine of ademption by extinction does not apply to this case because the proceeds of the sale of the Pickwick property were not held by Mr. Shepard's estate at the time of his death. She cites the second prong of the test enunciated in *Estate of Hume*, *supra*, for the proposition that the property or proceeds from its sale must be in the possession of the estate at the time of the testator's death. We cannot agree with this limitation on the doctrine of ademption by extinction, and believe it misconstrues *Estate of Hume*.

In *Estate of Hume*, the Court held (1) that the foreclosure sale of testator's property prior to death worked an ademption by extinction regardless of testator's intent and (2) the sale resulted in a "material alteration" of the devise such that proceeds from it could not be substituted for the specific gift. *Estate of Hume*, 984 S.W.2d 602, 604-606 (Tenn. 1999). Thus in *Estate of Hume*, the Court held that proceeds of the sale of the foreclosed property were part of the general estate.

In the case at bar, whether the proceeds from the sale of Mr. Shepard's Pickwick property were held by his estate or Ms. Shepard at the time of his death is irrelevant to whether the specific devise was adeemed by extinction. The devise of the Pickwick property under Mr. Shepard's Will indisputably was a specific legacy.[1] The parties likewise have stipulated that the Pickwick property was not in Mr. Shepard's estate at the time of his death. The legacy accordingly has been adeemed by extinction. As in *Estate of Hume*, the question now before this Court is to whom the proceeds

---

[1]The relevant portion of Mr. Shepard's Will reads:

<u>Specific Gifts</u>

. . . .

3.2     Gift to Spouse. I give all my right, title, and interest in and to the lot and dwelling house, together with all rights under any insurance policies relating thereto, which I own at Pickwick, Tennessee, to my spouse, BOBBYE C. SHEPARD, if living.

-4-

of the Pickwick property rightfully belong. Unless, as Ms. Shepard asserts, she received the proceeds from the Pickwick property as an inter vivos gift from Mr. Shepard, those proceeds rightfully are the property of Mr. Shepard's estate.

## II. Inter Vivos Gift

The trial court found by clear and convincing evidence that Mr. Shepard had made an inter vivos gift to Ms. Shepard of the proceeds of the sale of the Pickwick property. It is well-established that an inter vivos gift is established by delivery with an intention to give. *Atchley v. Rimmer*, 255 S.W. 366, 369 (Tenn. 1923). Mere possession of the subject property is not evidence of ownership or of delivery of a gift, particularly where the claimant had opportunity to acquire the property through other means. *Id.* at 368. While possession in consideration of all attending circumstances may be taken into consideration in determining whether the property was delivered as a gift, the burden is on the claimant of the property to show that possession is rightful. *Id.* at 368-369. This must be demonstrated by clear and convincing evidence. *Id.* at 369; *see also Ingram v. Phillips*, 684 S.W.2d 954, 957 (Tenn. Ct. App. 1985)(*perm. app. denied*).

Ms. Shepard testified "when he (Mr. Shepard)got into the hospital, he called and said he wanted Mike to have the property at the Hardin County appraisal." In her testimony at trial, Ms. Shepard testified that she deposited the proceeds of the sale of the Pickwick property into her own account "[b]ecause [she] thought the checks surely belonged to me since it was in the Will that I get the proceeds of the property, and I put it in my own account because there was enough already in the other account, and I wanted to invest that however I wanted to later on." Upon cross-examination, Ms. Shepard testified that she and Mr. Shepard did not discuss to whom the proceeds of the Pickwick property should go. Ms. Shepard stated, "Why would we need to [discuss the proceeds] when it was in the Will that the property proceeds come to me? . . . It was clear to me that it was my property or my proceeds."

Moreover, Ms. Shepard's testimony, standing alone, whatever its contents, would be inadequate to prove a gift. The testimony of the beneficiary of an inter vivos gift is not sufficient to establish the gift. *Atchley*, 255 S.W. at 369. This long-standing rule seeks to prevent the sort of fraud which easily could be perpetuated when the testimony of an interested beneficiary is offered as the only proof of gift after the death of the donor. *Id.*

This Court is sensitive to the underlying facts and circumstances of this case. However, we do not believe the record supports a finding by clear and convincing evidence that Mr. Shepard intended to make an inter vivos gift of the proceeds of the Pickwick property to Ms. Shepard. Ms. Shepard has failed to carry her burden of proof on this issue. We accordingly reverse the trial court. Proceeds from the sale of the Pickwick property rightfully belong to Mr. Shepard's estate.

### The Stocks

As noted above, the parties stipulate that Ms. Shepard, through the power of attorney, sold a portion of Mr. Shepard's stock holdings, deposited the proceeds in their joint account, then withdrew those proceeds and deposited them in her own account. Ms. Shepard testified that "[t]he sale of the stock was much more than $158,000." This testimony was not disputed by Executor. Ms. Shepard testified that Mr. Shepard used funds from the couple's joint account to purchase his stock holdings. Executor did not dispute this testimony, and the parties stipulate that the stocks were purchased during the course of the marriage. The parties do not dispute that Mr. Shepard controlled the Shepards' finances until shortly before his death. In the trial court, Executor did not allege wrongdoing on the part of Ms. Shepard with respect to the sale of a portion of Mr. Shepard's stock holdings. Executor's contention, as we understand it, is that the $158,000 in proceeds should not have been transferred by Ms. Shepard to her separate account. The trial court determined that the proceeds were an inter vivos gift from Mr. Shepard to Ms. Shepard.

As noted above, Ms. Shepard's testimony is not sufficient evidence to prove a gift. However, the totality of the evidence in the record supports a finding of a gift of a portion of Mr. Shepard's stock to Ms. Shepard. The Shepards' joint account was utilized for the purchase of the stocks. After the sale of the stock, the proceeds were returned to the same joint account. The parties stipulate that "[m]ost, if not all," of the stocks were acquired during the Shepards' marriage. They further stipulate that the sale of the stock was part of the Shepards' overall estate and income tax planning program. The entirety of the circumstances surrounding this transaction support the finding of a gift of a portion of Mr. Shepard's individually owned stock to Ms. Shepard. We therefore affirm on this issue.

### Undue Influence

Executor asserts that Ms. Shepard has not rebutted by clear and convincing evidence a presumption of undue influence arising from the power of attorney. We believe Executor's argument seeks to mix-and-match the concepts of undue influence with regard to the creation of a legacy or gift and the breach of fiduciary duty which may attend the actions of an attorney-in-fact. In Tennessee, undue influence does not arise as a legal presumption where the relationship is a close familial relationship. *Estate of Hamilton v. Morris*, 67 S.W.3d 786, 794-95 (Tenn. Ct. App.,2001). Moreover, Executor did not raise the issue of undue influence in the trial court, and may not argue it for the first time on appeal. *State Dep't of Human Servs. v. Defriece*, 937 S.W.2d 954, 960 (Tenn. Ct. App.1996). We accordingly decline to address the issue here.

### Waiver of the Dead Man's Statute

In light of the forgoing, we find it unnecessary to address whether the trial court erred by finding Executor had waived the Dead Man's Statute when it introduced portions of Ms. Shepard's deposition. This issue is pretermitted.

*Attorney's Fees*

Both parties to this action sought attorney's fees in the trial court. The trial court determined that since Executor did not prevail on any issue, that its motion for fees should be denied. The court found Ms. Shepard's attorney fees and expenses to be reasonable and necessary, and ordered these sums to be paid by the Robert B. Shepard Residuary Trust. A trial court's award of attorney's fees will not be disturbed absent an abuse of discretion. *See Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn.1995).

The general rule in Tennessee is that in the absence of a statutory or contractual provision prescribing otherwise, litigants must pay their own attorney's fees. In cases involving an estate as a party, attorney's fees of an attorney other than the attorney employed by the personal representative may be allowed out of the assets of the estate "only where the services have inured to the benefit of the estate." *Davis v. Mitchell*, 178 S.W.2d 889, 915 (Tenn.Ct.App.1943); *In re Estate of Sanderson*, No. W2001-01938-COA-R3-CV, 2002 WL 31423847 at *4. (Tenn. Ct. App. Oct. 28, 2002). We begin our review of the trial court's award of attorney fees to Ms. Shepard to be paid from Mr. Shepard's estate by noting what this case is not. Although Executor's complaint is titled: "Complaint to Construe Will," this is not a Will construction case. Mr. Shepard's Will is not ambiguous. In essence, this an action by the Executor of Mr. Shepard's estate against Ms. Shepard for conversion.

The services of Ms. Shepard's attorney have not inured to the benefit of Mr. Shepard's estate. These services were provided not to safeguard the integrity of Mr. Shepard's Will, nor to protect the property of the estate. The services of Ms. Shepard's attorney benefitted only the interests of Ms. Shepard. We accordingly reverse the award of attorney's fees to Ms. Shepard.

We turn next to Executor's prayer for attorney's fees. When executors retain legal counsel, they are liable for the legal fees until a court determines that the legal services were required and that the fee was reasonable. *Union Planters Nat. Bank v. Dedman*, 86 S.W.3d 515, 520 (Tenn. Ct. App. 2001). Attorney's fees may be charged to the estate where they can be shown to have been necessary, to have been incurred in good faith, and to inure to the benefit of the entire estate and not to one or more of the interested parties. *Id.; see In re Estate of Wallace*, 829 S.W.2d 696, 703 (Tenn. Ct. App.1992). These fees may then be charged against the estate as a cost of administration. *Id.*

The executor generally is the proper person to seek the recovery of assets rightfully the property of the estate, although a beneficiary may prosecute a claim where the executor does not act. 33 C.J.S. *Executors and Administrators* § 189-190 (1998). The executor's right to recover assets is predicated on whether recovery is "necessary to the due administration of the estate." *Id.* at § 189. An executor is entitled to attorney's fees necessarily and reasonably incurred in collecting, protecting and asserting or defending title to the assets of the estate. *Id.* at § 258. In light of the disposition of this case, we hold that Executor's necessary and reasonable attorney's fees may be charged against the residuary of Mr. Shepard's estate.

Trial courts have discretion to determine whether attorney's fees are reasonable. *Estate of Wallace*, 829 S.W.2d at 701. This determination must be made in light of all the circumstances. *Id.* Factors to be considered include the value of the benefit of the attorney's services to the estate, and the nature, extent, adequacy and promptness of those services. *Id.*

Executor seeks to recover attorney's fees of $39,961.40 and $2,480.20 in expenses advanced by counsel on its behalf. In her response to Executor's motion for attorney's fees, Ms. Shepard avers that these fees are excessive. We accordingly remand for a determination of whether Executor's attorney's fees were reasonable, hopeful that Mr. Shepard's estate will not be diminished further by protracted litigation of this issue.

Costs of this appeal are taxed one-half to the appellee, Bobbye C. Shepard, and one-half to the appellant, Union Planters Bank, Executor and Trustee, and its surety, for which execution may issue if necessary.

 

 

_____
DAVID R. FARMER, JUDGE